NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____

KENNETH ZAHL, M.D.,  )
         )
   Plaintiff,   )
         )  Civil Action No.: 06-3749 (JLL)
  v.      )
         )   **OPINION**
NEW JERSEY DEPARTMENT OF )
LAW AND PUBLIC SAFETY, )
et. al.,       )
         )
   Defendants.  )
_____)

For Plaintiff: Paul J. Verner, Esq.
For State Defendants: James J. Savage (*New Jersey Department of Law and Public Safety*)
For Kosovsky Defendants: Paul J. Fishman (*Friedman, Kaplan, Seiler& Adelman, LLP*)
For Bonnie Blackman: Andrew M. Epstein (*Lampf, Lipkind, Prupis & Petigrew*)
For Phillip Rubinfeld: Joseph Marc Gorrell (*Wolf, Block, Schorr, Solis, Cohen LLP*)
     Richard B. Robins (*Wolf, Block, Schorr, Solis, Cohen LLP*)

**LINARES**, District Judge.

  This matter comes before the Court by way of the motion [CM/ECF #168] to file a

Second Amended Complaint filed by Plaintiff Kenneth Zahl ("Plaintiff" or "Zahl") on September

12, 2008. No oral argument was heard. Fed. R. Civ. P. 78. For the reasons set forth in this

Opinion, the Plaintiff's motion is denied.

### INTRODUCTION

  As this Court writes only for the parties, and because it set forth the factual background to

this case extensively in a previous opinion, only a broad outline of this matter's factual basis

merits discussion. Zahl, an anesthesiologist, engaged in the practice of medicine in New Jersey

until 2006.  He was also licensed to practice in New York and Pennsylvania.  During the period

of time relevant to this case, Zahl's New Jersey practice involved providing "eye block"

anesthesia for Medicare-reimbursed surgery.

Zahl's billing method for the eye block procedures caused friction with the Medicare

system, and he was eventually found to have overcharged Medicare.  Zahl's former physician

employee, Defendant Bonnie Blackman ("Blackman"), reported his billing issues to the New

Jersey medical licensing authorities, and an investigation ("Zahl I") was commenced in 1999.

New Jersey's licensing board eventually revoked Zahl's license in 2003.  During Zahl's appeal,

he was permitted to continue practicing medicine under a billing monitoring program.  Before the

appeal of the first administrative case against Zahl ended, New Jersey brought a second

administrative complaint ("Zahl II") against Zahl for violating his billing monitoring.  The

Supreme Court of New Jersey eventually upheld the revocation of Zahl's license for his

Medicare billing improprieties in 2006.  In re License Issued to Zahl, 895 A.2d 437 (N.J. 2006).

While Zahl I and Zahl II were proceeding, Zahl sought to have this Court prevent the

New Jersey administrative authorities from proceeding, but his complaint was dismissed and he

was unsuccessful on appeal.  Zahl v. Harper, 282 F.3d 204, 206, 212 (3d Cir. 2002).

In his present action, Zahl alleges that conspirational connections between Blackman, his

ex-in-laws and ex-wife (the Kosovsky defendants), a private investigator hired by the Kosovskys

(defendant McKeown), the physician who replaced him in his eye block practice (Rubinfeld), an

office employee in his practice (Brittle), and state employees involved in the administrative cases

against him in New Jersey resulted in the loss of his license and practice.  Zahl filed his initial

complaint in this case by way of Order to Show Cause on August 10, 2006, seeking temporary

-2-

and preliminary injunctive relief; this Court denied Zahl's application for temporary restraints on August 28, 2006 and ordered Zahl to show cause why this Court possessed subject matter jurisdiction over his claims.  While the sua sponte order to show cause of this Court was pending, on April 30, 2007, Zahl filed an Amended Complaint.  On May 24, 2007, this Court concluded that the issues had changed dramatically due to Zahl's Amended Complaint, and the pending motions were dismissed without prejudice and a preliminary re-filing schedule established.  On March 25, 2008, this Court dismissed the majority of Zahl's claims.  (Op. of Mar. 25, 2008, passim.)  Zahl moved to amend his complaint a second time on September 12, 2008, and his motion was opposed by the New Jersey state defendants, Rubinfeld, Blackman, and the Kosovskys.

## DISCUSSION

Zahl's Second Amended Complaint alleges thirteen counts.  He seeks declaratory judgment under 28 U.S.C. § 2201 that the Defendants acted illegally; both temporary and preliminary injunctive relief under 18 U.S.C. § 1964(a) ("RICO") to prevent other States' medical licensing agencies from taking action based on New Jersey's revocation of Zahl's license; damages against the Kosovskys, McKeown, Blackman, Rubinfeld, Brittle and Harper under 42 U.S.C. § 1985(3) (civil rights conspiracy); damages against Harper under 42 U.S.C. § 1986 (neglecting to protect against conspiracy in derogation of equal protection); damages under a wide variety of federal and New Jersey RICO ("NJRICO") claims; and damages under common law civil conspiracy against the Kosovskys, McKeown, Blackman, Rubinfeld, Brittle and Harper.

### A.    Legal Standard

Leave to amend Zahl's complaint is governed by Federal Rule of Civil Procedure 15: "a

party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires."  Fed. R. Civ. P. 15(a)(2); <u>Shane v. Fauver</u>, 213 F.3d 113, 115 (3d Cir. 2000) (requiring leave of court or consent after first amendment).  The Supreme Court has elaborated on the standard to be applied when considering amendment requiring leave of court:

> In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be "freely given."

<u>Foman v. Davis</u>, 371 U.S. 178, 182 (1962).  "In assessing 'futility,' the District Court applies the same standard of legal sufficiency as applies under Rule 12(b)(6)." <u>Shane</u>, 213 F.3d at 115.

The applicable inquiry under Federal Rule of Civil Procedure 12(b)(6) is well-settled. Courts must accept all well-pleaded allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party.  <u>See</u> <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236 (1974), <u>abrogated on other grounds</u> by <u>Harlow v. Fitzgerald</u>, 457 U.S. 800 (1982); <u>Allegheny Gen. Hosp. v. Philip Morris, Inc.</u>, 228 F.3d 429, 434-35 (3d Cir. 2000).  However, courts are not required to credit bald assertions or legal conclusions improperly alleged in the complaint.  <u>See</u> <u>In re Burlington Coat Factory Sec. Litig.</u>, 114 F.3d 1410, 1429 (3d Cir. 1997).  Similarly, legal conclusions draped in the guise of factual allegations may not benefit from the presumption of truthfulness.  <u>See</u> <u>In re Nice Sys., Ltd. Sec. Litig.</u>, 135 F. Supp. 2d 551, 565 (D.N.J. 2001).

A sound complaint must set forth "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  This statement must "give the defendant

fair notice of what the . . . claim is and the grounds upon which it rests." <u>Bell Atl. Corp. v.</u> <u>Twombly</u>, 127 S.Ct. 1955, 1964-65 (2007) (quoting <u>Conley v. Gibson</u>, 355 U.S. 41, 47 (1957)). Moreover, "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true." <u>Id.</u>  Ultimately, however, the question is not whether plaintiffs will prevail at trial, but whether they should be given an opportunity to offer evidence in support of their claims.  <u>Scheuer</u>, 416 U.S. at 236. With this framework in mind, the Court turns now to Plaintiff's motion.

**B.**     **Count II**

This Court has, on several occasions, denied Orders to Show Cause brought by Zahl in order to prevent various licensing authorities from taking action against him.  (<u>See</u> Op. of September 3, 2008 at 1-2.)  In the Opinion of March 25, 2008, the second count of Zahl's Amended Complaint was dismissed without prejudice under the Rooker-Feldman doctrine.  (Op. of Mar. 25, 2008 at 23-24.)  Zahl re-alleges his request for preliminary injunctive relief against the licensing authorities of New York and Pennsylvania in the following manner:

> The Plaintiff will suffer irreparable harm if the temporary and prospective preliminary injunctive relief preserving the status quo by enjoining the efficacy of the New Jersey State Board's revocation decision as far as the revocation decision may otherwise be relied upon by other states to suspend or revoke Dr. Zahl's medical license.

(Sec. Am. Compl. at 72.)  This Court dismissed the parallel claim in the previous complaint based on two alternative reasons: first, that Zahl had failed to sue the relevant Pennsylvania and New York licensing authorities; and second, that "Zahl's plea for a limitation on the extraterritorial effect of the Board's decision revoking his New Jersey medical license is an

attempt to forestall harm that proceeds immediately from the state court adjudication" under the Rooker-Feldman doctrine.  (Op. of Mar. 25, 2008 at 23-24.)

Zahl, in his new complaint, attempts to cure the second defect by changing the statutory basis of his claim for injunctive relief from 42 U.S.C. § 1983 to 18 U.S.C. § 1962(a).  The State Defendants argue that Zahl's proposed amendment of Count II would be futile because the injunctive relief sought by Zahl is still attempting to limit the efficacy of a state court judgment in violation of the Rooker-Feldman doctrine.  (State Def. Opp. Br. at 9.)  Zahl's reply brief focuses on the application of Rooker-Feldman in light of his claims against Blackman, and makes no argument concerning his new Count II.  (Pl. State Def. Reply Br. at 2-7.)

### 1. Rooker-Feldman

The Rooker-Feldman doctrine, so named due to its arising out of the cases Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923), and District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983), serves as a jurisdictional bar to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005).  The doctrine recognizes that the Supreme Court of the United States alone has received a Congressional grant of authority under 28 U.S.C. § 1257 to hear appeals from state courts, and that lower federal courts lack the power to undo state court judgments.  Exxon Mobil Corp., 544 U.S. at 292.

A federal district court, however, is not divested of jurisdiction merely because a litigant brings a claim in federal court that relies on the same facts as a concurrent or previous state case. Id.  In parallel or concurrent proceedings, the Supreme Court has held that the Rooker-Feldman

doctrine does not replace the application of preclusion or abstention principles in cases where a litigant has some claim independent of those decided in the state court ruling.  Id. at 284, 292-293.  See also Lance v. Dennis, 546 U.S. 459, 466 (2006) (warning against conflation of preclusion principles with Rooker-Feldman).  The doctrine only applies where the subsequent federal case seeks redress of injuries caused by the state court judgment.  Exxon Mobil Corp., 544 U.S. at 283; Turner v. Crawford Square Apartments III, L.P., 449 F.3d 542, 547 (3d Cir. 2006).

### 2.      Comparison of the Dismissed Count II With the New Count II

When ruling on the previous version of count II, brought under § 1983, this Court reasoned thus:

> This is not a situation where a plaintiff has merely filed an independent federal claim based on the same underlying facts, as condoned by Exxon Mobil Corp., 544 U.S. at 292, and Turner, 449 F.3d at 547.  Zahl attempts to color his claim for injunctive relief in that light by noting that the injunctive relief would be based on 42 U.S.C. § 1983; unfortunately for Zahl, § 1983 does not permit this Court to review or otherwise modify the judgment of the New Jersey Supreme Court or the Board (in its adjudicatory capacity).  Even under the Ex parte Young fiction, § 1983 grants relief only against persons and persons acting in the official capacities of an office to which liability attaches, not against state adjudications.  42 U.S.C. § 1983; Ex parte Young, 209 U.S. 123 (1908).  Zahl's other § 1983 claims are not barred by Rooker-Feldman precisely because they seek relief on grounds independent of the decisions of the New Jersey Supreme Court and the Board and that they do not attempt to directly attack or modify the revocation of Zahl's New Jersey license.

(Op. of Mar. 25, 2008 at 23.)  This Court finds that although its reasoning in its prior opinion was predicated on the subtleties of 42 U.S.C. § 1983, the same result ensues if Zahl seeks to alter the extraterritorial effect of a state court judgment in this Court under 18 U.S.C. § 1964(a).  Zahl

seeks to have this Court restrain the "efficacy" of a New Jersey state court judgment.  (Sec. Am. Compl. at 72.)  Assuming <u>arguendo</u> that Zahl can obtain injunctive relief under RICO, that relief cannot take the form of a modification of a state court judgment in order to escape its deleterious effects.  <u>Exxon Mobil Corp.</u>, 544 U.S. at 283-84.  This Court, therefore, finds that Count II of Zahl's Second Amended Complaint may not be amended as the proposed amendment would be futile and subject to dismissal under Rule 12(b)(6).

**C.      The RICO Claims**

In order to successfully plead a civil claim under 18 U.S.C. § 1964, a plaintiff must allege that a person or persons conducted an enterprise through a pattern of racketeering activity or collection of unlawful debts proximately resulting in harm to the plaintiff's business or property interests.  18 U.S.C. § 1962(c); <u>Maio v. Aetna, Inc.</u>, 221 F.3d 472, 483 (3d Cir. 2000) (setting forth RICO standing requirement); <u>Leonard A. Feinberg, Inc. v. Central Asia Capital Corp., Ltd.</u>, 974 F. Supp. 822, 847 (E.D.Pa. May 1, 1997).  Generally, a Federal RICO enterprise requires pleading the following elements: evidence of an ongoing organization (formal or informal), that the members operate as a continuing unit, and that the enterprise exists separately from the activity alleged.  <u>United States v. Turkette</u>, 452 U.S. 576, 583 (1981); <u>United States v. Riccobene</u>, 709 F.2d 214, 221 (3d Cir. 1983), <u>abrogation</u> <u>on</u> <u>other</u> <u>grounds</u> <u>recognized</u> <u>by</u> <u>United States v. Vastola</u>, 989 F.2d 1318 (3d Cir. 1993).

The enterprise requirement under NJRICO requires a common purpose and an ascertainable structure "support[ing] the inference that the group engaged in carefully planned and highly coordinated criminal activity."  <u>State v. Ball</u>, 661 A.2d 251, 260-61 (N.J. 1995) (hereinafter "<u>Ball II</u>").  This Court looks to federal law to interpret NJRICO where state law is

silent. <u>Cetel v. Kirwan Fin. Group, Inc.</u>, 460 F.3d 494, 510 (3d Cir. 2006); <u>Interchange State Bank v. Veglia</u>, 668 A.2d 465, 472 (N.J. Super. App. Div. 1995) (noting that when New Jersey caselaw is silent, "parallel federal case law is an appropriate reference source to interpret the RICO statute").

This Court dismissed Zahl's state and federal RICO claims in their entirety for failure to allege an enterprise composed of persons with a common purpose in its Opinion of March 25, 2008.[1]  (Op. of Mar. 25, 2008 at 52-53.)  The dismissal was without prejudice.  (<u>Id.</u> at 53.)  In his Second Amended Complaint, Zahl pleads two different enterprises, the Zahl Ridgedale Medical Practice Enterprise and the Medical Licensure and Disciplinary Board Enterprise.  (Sec. Am. Compl. at 54, 57.)  The Zahl Ridgedale Medical Practice Enterprise is alleged to be composed of Ambulatory Anesthesia of New Jersey and Ridgedale Surgical Center.  (<u>Id.</u> at 55.)  The Medical Licensure and Disciplinary Board Enterprise in the Second Amended Complaint is made up of the New Jersey State Board of Medical Examiners.  (<u>Id.</u> at 59.)

### 1.    Federal RICO Continuity

In order to establish a pattern of racketeering activity under 18 U.S.C. § 1962(c) and (d), a plaintiff must allege two predicate racketeering acts as defined elsewhere in the RICO statute committed within ten years of each other.  18 U.S.C. § 1961(5); <u>H.J. Inc. v. Northwestern Bell Tel. Co.</u>, 492 U.S. 229, 237 (1989).  Federal RICO requires more than mere accretion of predicate acts, however: a plaintiff must adequately allege a relationship between the predicate acts and a threat of continuing activity.  <u>Northwestern Bell Tel. Co.</u>, 429 U.S. at 238-39.  The

---

[1]This Court dismissed Zahl's federal RICO aiding and abetting claims with prejudice, but as they do not reappear in the Second Amended Complaint, those claims are not relevant to this discussion.  (Op. of Mar. 25, 2008 at 46-47; Sec. Am. Compl. at 10.)

Third Circuit Court of Appeals has distilled the teachings of <u>Northwestern Bell</u> into two tests, one for relatedness and one for continuity.  <u>Banks v. Wolk</u>, 918 F.2d 418, 422 (3d Cir. 1990). Relatedness requires important elements or "distinguishing characteristics" in common between non-isolated predicate acts; continuity requires at least one criminal scheme that is not necessarily ongoing, but does present the "threat of repetition."  <u>Banks</u>, 918 F.2d at 422.  If after examining continuity under the <u>Northwestern Bell</u> standard, some doubt as to continuity exists, the Third Circuit requires the finding of a pattern of racketeering activity via analyzing various pattern factors: "the number of unlawful acts, the length of time over which the acts were committed, the similarity of the acts, the number of victims, the number of perpetrators, and the character of the unlawful activity."  <u>Banks</u>, 918 F.2d at 423 (quoting <u>Barticheck v. Fidelity Union Bank/First Nat'l State</u>, 832 F.2d 36, 39 (3d Cir. 1987)); <u>Tabas v. Tabas</u>, 47 F.3d 1280, 1296 (3d Cir. 1995).

The State Defendants argue that Zahl cannot demonstrate the requisite threat of future harm because the alleged RICO scheme had a finite endpoint and a single victim, and because the sole remaining state defendant, Harper, is retired.  (State Def. Opp. Br. at 29.)  Rubinfeld similarly argues that there is no prospective criminal activity from the alleged RICO scheme because New Jersey revoked Zahl's license and the Ridgedale Surgical Center declined to renew Zahl's contract.  (Rubinfeld Opp. Br. at 3-4.)  Zahl maintains that continuity is demonstrated by Harper's participation in more than one of the various suits by and against Zahl, and also by Harper's communication with states outside New Jersey and various judicial bodies regarding Zahl.  (Pl. State Def. Reply Br. at 16.)

The Court finds that the activities alleged by Zahl, looked at in the light most favorable

to him, occurred over a sufficiently substantial period of time to satisfy the durational

requirement of a RICO claim.  Although Zahl alleges that the Kosovskys sought to harm him as

early as 1993, Zahl alleges that the conspiracy related to his license and practice started in 1997,

when he hired Blackman and when Rubinfeld applied for a job with his practice.  (Sec. Am.

Compl. at 10, 14-15.)  Zahl further alleges that the conspiracy continued until at least 2003, when

his license was originally revoked.  (Sec. Am. Compl. at 32.)  As the Third Circuit has found that

a pattern of activity occurring over 3.5 years satisfies the durational portion of the RICO

continuity test, this Court finds that Zahl has plead sufficient duration to allege RICO continuity.

Tabas, 47 F.3d 1280, 1294.

As the durational requirement has been met, this Court turns to the issue of whether or

not the racketeering activity in the Second Amended Complaint is an ongoing activity or,

although ended, poses further risk of recurring in the future.  Banks, 918 F.2d at 422.  As

discussed at length in the Second Amended Complaint, Zahl has lost both his medical license

and his practice, the goals of the two alleged RICO enterprises.  (Sec. Am. Compl. at 55, 59.)

The pattern of racketeering activity alleged, therefore, is closed-ended, and Zahl must allege a

threat of repetition in order to establish RICO continuity.  Banks, 918 F.2d at 422.

Several courts have addressed the threat of repetition in closed-ended RICO schemes with

a small number of alleged victims, similar to Second Amended Complaint.  See, e.g., Gamboa v.

Valdez, 457 F.3d 703, 708 (7th Cir. 2006); Western Assocs. Ltd. P'ship v. Market Square

Assocs., 235 F.3d 629, 634 (D.C. Cir. 2001) (utilizing the Third Circuit RICO pattern factors);

Edmundson & Ghallager v. Alban Towers Tenants Ass'n, 48 F.3d 1260, 1263 (D.C. Cir. 1995)

(same); Banks, 918 F.2d at 420.  Zahl and the State Defendants disagree over whether the

Seventh Circuit case of Gamboa v. Valdez is on point.  457 F.3d 703; State Def. Opp. Br. at 28; Pl. State Def. Reply Br. at 16.  The RICO claim in Gamboa was brought by the plaintiff after he had been charged and acquitted of Sindulfo Miranda's murder.  457 F.3d at 704.  Subsequent to the trials of those originally charged with Miranda's murder, the real perpetrators were identified and the convictions of the other original defendants were overturned.  Id.  Gamboa then brought a complaint against the detectives on the Miranda case and the City of Chicago.  Id.  On appeal, the sole issue addressed was whether or not Gamboa's RICO claim met the continuity requirement of Northwestern Bell.  Gamboa recognized that certain RICO complaints could survive based upon "a completed scheme that, by its duration, can carry an implicit threat of future harm," but ultimately found that the plaintiff's complaint was based on a one-time murder investigation and that there was no indication that the detectives would continue their alleged illegal scheme.  Id. at 706, 708.

Zahl's case is factually dissimilar to Gamboa in that he has not brought it against a single set of detectives working on a single murder.  Zahl, instead, alleges that his ex-in-laws and ex-wife were the masterminds of dual schemes with the purposes of forcing him out of his practice and forcing him out of the practice of medicine.  (Sec. Am. Compl., passim.)  This Court finds, however, that the schemes alleged by Zahl are at least as unlikely to be repeated as those in Gamboa.  Zahl does not currently hold a license to practice medicine, and there is no indication in the Second Amended Complaint that the defendants seek to attack the licenses or acquire the practices of other physicians: Harper is now retired, Karen Kosovsky is hardly likely to be seeking out other doctors to engage in acrimonious divorces with, and Rubinfeld and Blackman are not accused of fraudulently seeking to obtain any other medical practices.  Zahl's new

-12-

pleading, credited as it must be under the Rule 12(b)(6) standard, alleges only a racketeering scheme that has succeeded, ended, and existed only to persecute a single victim, Zahl.  This Court, therefore, finds that the federal RICO claims in Zahl's Second Amended Complaint do not allege a continuing pattern of racketeering activity.  Banks, 918 F.2d at 422.

Turning to the Barticheck pattern of racketeering activity factors, the Court first looks to the illegal acts alleged by Zahl in the "Illegal Acts" section of the Second Amended Complaint.  832 F.2d at 39; Sec. Am. Compl. at 60-70.  Although Zahl repeatedly mentions illegal acts and mentions many of their elements through legal conclusions, this Court is forced to look elsewhere in the Second Amended Complaint for a more concrete explanation including specific conduct of Defendants.  (Sec. Am. Compl. at 60-70.)  The press release by Harper, if deceptive as alleged, could conceivably support a mail or wire fraud charge, depending upon how it was distributed.  (Id. at 46.)  Similarly, Blackman's whistleblower letter to Zahl, if deceptive, or, as Zahl claims, extortionate, could be one of the predicate acts required.  (Id. at 16.)  The bulk of the pleading's substance, however, refers to non-illegal acts rendered illegal only by use of some form of the word "fraud."  (See, e.g., id. at 14-15.)  This Court finds, therefore, that while Zahl alleges many acts, only a few are potentially illegal in any objective sense.

As this Court has already addressed the duration of the alleged pattern of activity and found it sufficient in length to support a RICO claim, the next factor for examination is the similarity of the acts.  832 F.2d at 39.  Each of the acts alleged by Zahl is unique; rather than a repeatable scheme of requesting protection money, Northwestern Bell, 492 U.S. at 242, Zahl presents a kaleidoscope of communications by Blackman; Rubinfeld's contacts with Ridgedale Surgical Center; and Harper's conduct of the State's case against Zahl, including the

aforementioned press release.  (Id. at 14-16, 46.)  These acts were all unique to particular stages of Zahl's loss of his practice and his license, and do not present an easily repeated pattern of criminal activity.

The number of victims in the alleged RICO scheme is one: Zahl himself.  832 F.2d at 39 (listing fourth factor as the number of victims).   Any injury to other parties is attenuated enough so as to be indirect.  See Western Assocs. Ltd. P'ship, 235 F.3d at 635 (reducing scope of RICO allegation to party actually harmed).  Courts have found the threat of continued criminal activity to be remote when a successful closed-ended scheme had only one victim, and this factor weighs heavily against Zahl, as there does not appear to be any reason for any additional activity against Zahl by the defendants.  Id. at 636; Banks, 918 F.2d at 422.

The number of perpetrators in Zahl's new pleading is large enough to weigh in favor of a pattern of racketeering activity.  832 F.2d at 39 (listing fifth factor as the number of perpetrators).  The three Kosovskys, McKeown, Brittle, Blackman, Rubinfeld, and Harper present a substantial number of individuals acting in alleged concert.

Finally, the character of the unlawful activity weighs against Zahl with respect to continuity.  832 F.2d at 39 (announcing final factor to be the character of the unlawful activity).  The alleged unlawful activity consists mainly of disclosures to Ridgedale Surgical Center and New Jersey medical licensing authorities of information sometimes alleged to be false or fraudulent; the other alleged unlawful activity mainly occurs in the context litigation between Zahl and Blackman or Zahl and the State of New Jersey.  These various allegations do not hang together in a pattern, let alone a pattern likely to be repeated with respect to Zahl or another physician.

-14-

Analysis of these factors indicates that Zahl's attempt to plead federal RICO in the Second Amended Complaint is futile.  Courts have generally looked with disfavor upon completed RICO schemes focused on a single victim, finding that they do offer a threat of continued criminal activity.  <u>Gamboa</u>, 457 F.3d at 708; <u>Western Assocs. Ltd. P'ship</u>, 235 F.3d at 634; <u>Edmundson & Ghallager</u>, 48 F.3d at 1263; <u>Banks</u>, 918 F.2d at 420.  Although Zahl's allegations cover a substantial period of time, they are too idiosyncratic in terms of the activities of the participants and the objects sought for this Court to find that the Second Amended Complaint satisfies the continuity requirement.  Zahl's motion to amend his federal RICO claims, therefore, is denied.

### 2.      NJRICO Continuity

The Supreme Court of New Jersey embraced the concept of continuity as part of a pattern of racketeering activity under NJRICO in <u>Ball II</u>.  661 A.2d at 264.  "The pattern of racketeering activity and the activity criminalized under RICO should be, or threaten to be, ongoing." <u>Ball II</u>, 661 A.2d at 264.  New Jersey did not, however, adopt the continuity test of <u>Northwestern Bell</u>; it instead looked to the <u>Barticheck</u> totality of the circumstances test, discussed <u>supra</u>.  <u>Ball II</u>, 661 A.2d at 264.  As this Court has already found that Zahl's federal RICO claims fail because they cannot satisfy the <u>Barticheck</u> factors, Zahl's NJRICO claims may not be amended due to futility.

### D.      The Remaining Claims

In the remainder of the Second Amended Complaint, Zahl re-pleads his civil conspiracy claim, previously dismissed by this Court in full (Count XIII); his claim for declaratory judgment, previously dismissed by this Court in part (Count I); and his § 1985(3) and § 1986 claims that this Court previously permitted to survive against some Defendants (Counts III and

IV).  As Zahl's § 1985(3) claim serves as the basis (or final remaining basis) for the § 1986, civil

conspiracy, and declaratory judgment claims, this Court will turn first to the parties' arguments

concerning the civil rights conspiracy.

### 1.      Count III: 42 U.S.C. § 1985(3)

In its prior Opinion, this Court found that Zahl had set forth a sufficient claim under 42

U.S.C. § 1985(3) with respect to some parties.  (Op. of Mar. 25, 2008 at 56.)  The State

Defendants now argue that Zahl should not be permitted to amend his pleading with respect to

this count because Zahl cannot demonstrate that a meeting of the minds occurred to form the

conspiracy, and, relying on a footnote in an unreported decision, that a § 1985(3) claim requires

another underlying cause of action to support its continued existence.  (State Def. Opp. Br. at 21,

24.)  Rubinfeld, in his letter brief, maintains that Zahl has not pled discriminatory animus with

respect to any other individual other than Harper, that a § 1985(3) claim cannot be supported by

mere commercial rapacity, and that proximate cause does not exist.  (Rubinfeld Opp. Br. at 5-8.)

The Kosovskys, for their part, argue that this Court's dismissal of the § 1985(3) count against

them on proximate cause grounds has not been cured.  (Kosovsky Def. Opp. Br. at 14.)  Zahl,

despite liberally construing the June 5, 2008 Order of the Honorable Claire C. Cecchi, U.S.M.J.,

as granting him permission to file multiple over-length reply briefs,[2] opposes only the proximate

cause arguments.  (Pl. Kosovsky Reply Br. at 4-9; Pl. State Def. Reply Br. at 20-21.)

A plaintiff must plead the following in order to establish a claim under 42 U.S.C. §

---

[2]This Court notes that Zahl has now twice filed motions in which his substantive
arguments are first raised in reply.  (Op. of Sept. 3, 2008.)  This Court finds that such litigation
by surprise is not appropriate, and hereby warns all parties to this action that the Federal and
Local Rules of Civil Procedure will hereafter be strictly enforced, particularly with respect to the
content and length of briefs.

1985(3):

> (1) a conspiracy; (2) for the purpose of depriving, either directly or
> indirectly, any person or class of persons of the equal protection of
> the laws, or of equal privileges and immunities under the laws; and
> (3) an act in furtherance of the conspiracy; (4) whereby a person is
> injured in his person or property or deprived of any right or
> privilege of a citizen of the United States.

Farber v. City of Paterson, 440 F.3d 131, 134 (3d Cir. 2006) *(*quoting United Bhd. of Carpenters
& Joiners v. Scott, 463 U.S. 825, 828-29 (1983)).  Furthermore, "[i]t is well established that §
1985(3) does not itself create any substantive rights; rather, it serves only as a vehicle for
vindicating federal rights and privileges which have been defined elsewhere."  Brown v. Philip
Morris Inc., 250 F.3d 789, 805 (3d Cir. 2001).  A civil rights conspiracy also requires a "meeting
of the minds" to support a finding of understanding or agreement.  Startzell v. City of
Philadelphia, 533 F.3d 183, 205 (3d Cir. 2008).

### a.    Substantive Rights under § 1985(3)

Courts have held, as the State Defendants contend, that § 1985(3) requires "substantive"
claims other than conspiracy to support a § 1985(3) claim.  Beztak Land Co. v. City of Detroit,
298 F.3d 559, 569 (6th Cir. 2002) ("Because the substantive allegations that form the basis of
Beztak's conspiracy claims were properly dismissed, Beztak's conspiracy counts also fail.");
Denney v. City of Albany, 247 F.3d 1172, 1190 (11th Cir. 2001); Indianapolis Minority
Contractors Ass'n, Inc. v. Wiley, 187 F.3d 743, 754 (7th Cir. 1999) ("As a threshold matter, we
note that the absence of any underlying violation of the plaintiffs' rights precludes the possibility
of their succeeding on this conspiracy count.").  This Court's analysis of this Circuit's precedent,
however, indicates that the "substantive" claim upon which a § 1985(3) claim may be brought is

not necessarily an independent cause of action, but a violation of a previously existing right, such as a right under the Constitution of the United States.  Thomas v. Independence Twp., 463 F.3d 285, 298 (3d Cir. 2006) ("[W]e conclude that the allegations of the complaint adequately allege constitutional violations which form the basis of plaintiffs' claims for relief under § 1985(3) and § 1986.").  This Court, therefore, finds that unlike a common law civil conspiracy under New Jersey law, Farris v. County of Camden, 61 F. Supp 2d 307, 349 (D.N.J. 1999), a § 1985(3) claim can survive as an independent cause of action, and that leave to amend is not futile with respect to this argument by the State Defendants.

### b.    Common Aims of the Civil Rights Conspiracy

This Court finds, however, that the Second Amended Complaint fails to successfully plead a civil rights conspiracy because there is no common purpose.  Rubinfeld is correct that a commercial motive cannot suffice in a § 1985(3) claim: "the victim of a conspiracy motivated by race discrimination may bring a § 1985(3) claim, while the victim of mere commercial or economic animus may not."  Farber, 440 F.3d at 138 (internal citation omitted) (citing United Bhd. of Carpenters and Joiners of Am. v. Scott, 463 U.S. 825, 837-38 (1983).  Furthermore, the class-based animus necessary in a § 1983(5) claim "unquestionably connotes something more than a group of individuals who share a desire to engage in conduct that the § 1985(3) defendant disfavors."  Bray v. Alexandria Women's Health Clinic, 506 U.S. 263, 269 (1993) (private conspiracy context).

Sifting through the still-voluminous Second Amended Complaint, this Court finds that although Zahl does sufficiently plead discriminatory animus against Harper for his comments concerning the potential for Zahl to relocate to the Dominican Republic, the remainder of the

civil rights conspiracy is plead upon commercial or family animus not recognizable in the §
1985(3) context.  Zahl states that the conspiracy started with the family court proceedings in New
York involving the Kosovskys and "escalated" into the scheme to drive him to the Dominican
Republic.  (Sec. Am. Compl. ¶¶ 4, 31.)  Zahl bases his § 1985(3) claim on animus against his
Dominican ancestry and an absence of a rational basis in his treatment when compared to other
doctors.  (Id. ¶ 7.)  He alleges that Blackman and Rubinfeld sought to assist the Kosovskys in the
family court proceedings and obtain an interest in his practice.  (Id. ¶¶ 51-52, 55-56.)  Although
Zahl claims that Blackman and Rubinfeld eventually joined a conspiracy to drive him out of the
country, he alleges facts that support only their commercial interests in his practice and personal
animus.  (Id. ¶¶ 56-68; 70-71, 156, 158.)  Finally, Zahl's basis in the Second Amended
Complaint for a class-based animus with respect to Harper now rests upon Harper "attempting to
coerce and extort Dr. Zahl into giving up his rights to practice medicine and move to the
Dominican Republic in exchange for reinstatement after a number of years."  (Id. ¶ 125.)

Thus, the only basis in the Second Amended Complaint for invidious, class-based animus
resides with Harper.  (Id. ¶ 125.)  The remainder of the participants at issue in this motion were
motivated by commercial interests or by seeking to gain advantage in other litigation; these are
not within the scope of § 1985(3).  Bray, 506 U.S. at 269; Farber, 440 F.3d at 138.  The
Complaint fails to indicate any facts to support a meeting of the minds suggesting common
animus among the members of the alleged conspiracy, and therefore does not suffice under
Federal Rule of Civil Procedure 8(a) to set forth sufficient facts to place Defendants on notice of
the conduct to be defended in court.  Startzell, 533 F.3d at 205; Phillips v. County of Allegheny,
515 F.3d 224, 233 (3d Cir. 2008) (requiring a complaint to set forth facts suggestive of the illegal

conduct alleged).

Furthermore, Zahl's § 1985(3) claim with respect to the irrationally disparate treatment he was subject to in comparison to other disciplined doctors is without merit.  The Third Circuit Court of Appeals in Farber found that political affiliation, despite having some support in the legislative history of § 1985(3), could not by itself support the invidiousness requirement of § 1985(3).  440 F.3d at 138-43.  Zahl's irrational basis equal protection argument based on professional certification (the class of doctors) presents so little similarity with the classes looked on with favor in Farber—"race, sex, or mental retardation"—that it does not deserve further discussion: Zahl cannot rest his § 1985(3) claim on a denial of equal protection to physicians as a class.  Id. at 135.  This Court, therefore, finds that Zahl may not amend his § 1985(3) claims due to futility based on failure to successfully plead a § 1985(3) civil rights conspiracy.

### 2.   Section 1986, Declaratory Judgment, and Common Law Conspiracy

A § 1986 claim is dependent upon a § 1985 claim.  Clark v. Clabaugh, 20 F.3d 1290, 1295 n.5 (3d Cir. 1994).  Plaintiff's § 1986 claim against Harper in the Second Amended Complaint is futile without its accompanying § 1985 claim.

Similarly, a common law conspiracy claim under New Jersey law requires an additional independent claim: as there are no remaining substantive claims in the Second Amended Complaint, it, amendment as to the common law conspiracy claim also be denied as futile. Farris, 61 F. Supp 2d at 349 (common law conspiracy requires underlying claim).

In order for this Court to grant the relief of declaratory judgment under 28 U.S.C. § 2201, "there must be a live dispute between the parties."  Zimmerman v. HBO Affiliate Group, 834 F.2d 1163, 1170 (3d Cir. 1987).  Plaintiff bases his declaratory judgment claim, Count I, on the

generalized illegality of Defendants' conduct and upon his § 1985(3) claim.  (Sec. Am. Compl. ¶ 176.)  In the absence of the § 1985(3) claim, this Court finds that there is no "real question of conflicting legal interests" if there are no substantive claims to be disputed by parties either in this suit or in a concurrent or imminent legal action.  Zimmerman, 834 F.2d at 1170.

As amendment of all of Plaintiff's claims has been found to be futile, this Court will not address the remainder of the moving Defendants' various arguments.  Furthermore, as this Court finds that the grounds upon which it denied amendment to Plaintiff's § 1985(3) claim may affect the legal basis of his claim under the prior First Amended Complaint, still pending, moving Defendants shall be granted leave to file motions to dismiss with respect to the § 1985(3),[3] § 1986, common law conspiracy, and declaratory judgment claims in the First Amended Complaint.

## CONCLUSION

For the foregoing reasons and as set forth in the accompanying order, Plaintiff's motion to amend is denied as futile.  An appropriate order accompanies this Opinion.


DATED: March 27, 2009                                    /s/ Jose L. Linares
                                                       United States District Judge

---

[3]As the Kosovskys have already had the First Amended Complaint's § 1985(3) claim dismissed as to them, they may not make additional arguments as to its dismissal.