NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____

KENNETH ZAHL, M.D.,      )
                )
       Plaintiff,      )
                )     Civil Action No.: 06-3749 (JLL)
     v.          )
                )     **OPINION**
NEW JERSEY DEPARTMENT OF )
LAW AND PUBLIC SAFETY,   )
et. al.,             )
                )
       Defendants.    )
_____)

For Plaintiff: Paul J. Verner, Esq.
For State Defendants: James J. Savage (*New Jersey Department of Law and Public Safety*)
                 Tara Adams Ragone (*New Jersey Department of Law and Public Safety*)
For Kosovsky Defendants: Paul J. Fishman (*Friedman, Kaplan, Seiler& Adelman, LLP*)
For Bonnie Blackman: Andrew M. Epstein (*Lampf, Lipkind, Prupis & Petigrew*)
For Phillip Rubinfeld: Joseph Marc Gorrell (*Wolf, Block, Schorr, Solis, Cohen LLP*)
                 Richard B. Robins (*Wolf, Block, Schorr, Solis, Cohen LLP*)

**LINARES**, District Judge.

     This matter comes before the Court by way of the motions to dismiss [CM/ECF #191,

196, 204, 213, 217, 218] filed by Defendants Kevin McKeown ("McKeown"), Philip Rubinfeld

("Rubinfeld"), Bonnie Blackman ("Blackman"), Harry Kosovsky, Gertrude Kosovsky, and Karen

Kosovsky ("the Kosovskys"), and the State Defendants.[1]  Also before the Court at this time is the

motion for reconsideration [CM/ECF #226] filed by Plaintiff Kenneth Zahl ("Plaintiff" or

"Zahl").  No oral argument was heard.  Fed. R. Civ. P. 78.  For the reasons set forth in this

_____

     [1]The State Defendants are the New Jersey Department of Law and Public Safety, Douglas
J. Harper, and, in his capacity as a witness, Philip Rubinfeld.

Opinion, Plaintiff's motion is denied, McKeown's motion is denied, Blackman's motion is granted, and the motions of the remaining Defendants are granted in part and denied in part.

## INTRODUCTION

This Court will only provide a brief recitation of the facts, as it writes only for the parties. Zahl was a licensed medical doctor practicing in the State of New Jersey through 2006. Zahl's practice during the period of time relevant to this case involved providing "eye block" anesthesia for Medicare-reimbursed surgery. Billing controversies with Medicare were reported to New Jersey's licensing authorities by Zahl's employee Blackman, eventually resulting in two separate investigations by the New Jersey State Board of Medical Examiners ("the Board"). Zahl's license to practice medicine was originally revoked in 2003, but he continued to practice until the revocation pursuant to the first investigation became final in 2006. In re License Issued to Zahl, 895 A.2d 437 (N.J. 2006).

In his present action, Zahl alleges that conspiratorial connections between Blackman, his ex-in-laws and ex-wife (the Kosovsky defendants), a private investigator hired by the Kosovskys (McKeown), the physician who replaced him in his eye block practice (Rubinfeld), an office employee in his practice (Brittle), and state employees involved in the administrative cases against him in New Jersey resulted in the loss of his license and practice. Zahl filed his initial complaint in this case by way of Order to Show Cause on August 10, 2006, seeking temporary and preliminary injunctive relief; this Court denied Zahl's application for temporary restraints on August 28, 2006 and ordered Zahl to show cause why this Court possessed subject matter jurisdiction over his claims. While the sua sponte order to show cause of this Court was pending, on April 30, 2007, Zahl filed an Amended Complaint. On May 24, 2007, this Court concluded

that the issues had changed dramatically due to Zahl's Amended Complaint, and the pending motions were dismissed without prejudice and a preliminary re-filing schedule established. On March 25, 2008, this Court dismissed the majority of Zahl's claims. (Op. of Mar. 25, 2008, passim.) Zahl moved to amend his complaint a second time on September 12, 2008; this Court denied his motion to file a Second Amended Complaint on March 27, 2009. In the March 27, 2009 Opinion and Order, this Court granted certain Defendants in the case leave to file renewed motions to dismiss on limited grounds. (Op. of Mar. 27, 2009 at 21.) Various Defendants subsequently filed motions to dismiss, and Zahl filed a motion for reconsideration of the March 27, 2009 Opinion.

## DISCUSSION

This Court has before it several motions to dismiss and a motion for reconsideration. Two of the motions to dismiss have been filed by individuals who did not previously file such motions: Blackman and McKeown. Blackman, although she filed an answer to Zahl's Amended Complaint, was invited to submit a motion to dismiss in this Court's March 27, 2009 Opinion. McKeown, appearing pro se, has filed two identical motions to dismiss. The remaining motions to dismiss were filed pursuant to the March 27, 2009 Opinion, as was Plaintiff's motion for reconsideration. As so many of the other motions rely at least in part upon this Court's March 27, 2009 decision, this Court will first address the motion for reconsideration.

### A.     Reconsideration

Federal Rule of Civil Procedure 59(e) provides that a party may file a motion with the Court to alter or amend a judgment within ten days of the entry of the judgment. Local Civil Rule 7.1(i) states that a motion for reconsideration "setting forth concisely the matter or

controlling decisions which the party believes the Judge or Magistrate Judge has overlooked" may be filed within ten business days after entry of an order.  L.Civ.R. 7.1(i).[2]  Reconsideration, however, is an extraordinary remedy and should be granted "very sparingly."  See L.Civ.R. 7.1(i) cmt.6(d); see also Fellenz v. Lombard Investment Corp., Nos. 04-3993, 04-5768, 04-3992, 04-6105, 2005 WL 3104145, at *1 (D.N.J. Oct. 18, 2005) (citing Maldonado v. Lucca, 636 F. Supp. 621, 630 (D.N.J. 1986)).  The motion may not be used to re-litigate old matters or argue new matters that could have been raised before the original decision was reached.  See, e.g., P. Schoenfeld Asset Mgmt., L.L.C. v. Cendant Corp., 161 F. Supp. 2d 349, 352 (D.N.J. 2001).

There are three grounds for granting a motion for reconsideration:  (1) an intervening change in controlling law has occurred; (2) evidence not previously available has become available; or (3) it is necessary to correct a clear error of law or prevent manifest injustice.  See, e.g., Carmichael v. Everson, No. 03-4787, 2004 WL 1587894, at *1 (D.N.J. May 21, 2004); Brackett v. Ashcroft, No. Civ. 03-3988, 2003 WL 22303078, at *2 (D.N.J. Oct. 7, 2003).

On reconsideration, Plaintiff requests three things: first, for this Court to find that his request for leave to amend his 42 U.S.C. § 1985(3) claim was not futile; second, for this Court to find that his request for leave to amend his civil RICO claims was not futile;[3] and last, for this Court to grant him leave to further amend his pleadings to add a 42 U.S.C. § 1983 conspiracy

---

[2] This rule was previously Local Civil Rule 7.1(g).

[3]Plaintiff makes his RICO argument in his opposition brief to Defendants' motion to dismiss, and not in his reconsideration brief.  Local Rule 7.2(b) sets forth a strict limit of fifteen pages for a reconsideration brief, and Plaintiff's splitting his argument into two briefs results in more than fifteen pages of argument.  As this Court finds that it may consider only one of Plaintiff's arguments on the instant motion, however, it will not rule on the propriety of Plaintiff's briefs.

claim.  (Pl. Reconsid. Br. at 1-2.)

## 1.    Claims under § 1985(3) and § 1983

Reconsideration is a tightly circumscribed procedural remedy, and cannot comprehend issues that were outside of the scope of this Court's March 27, 2009 Opinion.  Khair v. Campbell Soup Co., 893 F. Supp. 316, 337 (D.N.J. 1995); Florham Park Chevron, Inc. v. Chevron U.S.A., Inc., 680 F. Supp. 159, 162 (D.N.J. 1988) ("Local Rule 12(I) does not, however, contemplate a Court looking to matters which were not originally presented, but which have since been provided for consideration.").  This Court did not have before it any argument based upon a § 1983 claim in the underlying motion for leave to amend the pleadings.  Zahl's Second Amended Complaint listed thirteen counts, including a § 1985(3) conspiracy (Count III) and a common-law civil conspiracy (Count XIII), but did not allege a § 1983 conspiracy.  (Sec. Am. Compl. at 73-74, 95-96.)  In the Second Amended Complaint, Zahl prefaced his discussion of § 1983 conspiracy caselaw by stating that the § 1983 law supported his claims under § 1985(3) and § 1986.  (Id. at 3-4.)  This Court, however, did not have before it on the motion now under reconsideration a proposed pleading containing a claim under § 1983.  Accordingly, this Court shall not consider Plaintiff's request for leave to amend the pleadings to add a § 1983 claim on the instant motion.  Khair, 893 F. Supp. at 337.

Zahl's argument for reconsidering amendment of his § 1985(3) conspiracy claim is that the Second Amended Complaint included by implication a § 1983 conspiracy claim that the Court did not consider:

> The proposed [Second Amended Complaint] did not again include a § 1983 equal protection substantive claim against Defendant Harper since the Court had dismissed the § 1983 substantive claim

> against defendant Harper with prejudice. Importantly, however,
> Plaintiff Zahl's [Second Amended Complaint] clearly intended to
> allege a conspiracy by Defendant Harper and the private non-State
> Defendants to violate Plaintiff Zahl's equal protection rights since
> the complaint alleged these defendants <u>conspired</u> to violate
> Plaintiff Zahl's equal protection rights under § 1985(3) by
> intentionally, vindictively, selectively, arbitrarily and irrationally
> treating him differently than other similarly situated doctors in
> furtherance of the conspiracy.

(Pl. Reconsid. Br. at 6 (emphasis in original).)  Zahl does not directly argue that this Court's

denial of his motion to amend his § 1985(3) claim was erroneous.

With respect to Zahl's interpretation of the Second Amended Complaint, this Court notes

that the proposed pleading did contain a civil rights conspiracy claim, couched in terms of §

1985(3).  (Sec. Am. Compl. at 73-74.)  It did not contain a § 1983 conspiracy claim, and this

Court did not address such a claim in its March 27, 2009 Opinion.

Zahl does assert, in a footnote, that courts have addressed § 1983 "class-of-one" claims

when such claims are only tenuously asserted.  (Pl. Reconsid. Br. at 9 n.3.)  Even if this Court

was persuaded by the case cited by Zahl, <u>Walsh v. Town of Lakeville</u>, Zahl's Second Amended

Complaint did not make "passing mention" of a § 1983 claim.  431 F. Supp 2d 134, 143 (D.

Mass. 2006).  Zahl's Second Amended Complaint mentioned a case discussing § 1983 seventy

pages prior to setting forth his § 1985(3) civil rights conspiracy claim.  (Sec. Am. Compl. at 3-4,

73-74.)  Given the very explicit and clear nature of the formal counts laid out in Zahl's Second

Amended Complaint, this Court declines to read a § 1983 cause of action into it.

Furthermore, even if a § 1983 cause of action were to be inferred from Zahl's Second

Amended Complaint, such a claim was not laid before the Court in the motion for leave to

amend and not addressed in this Court's March 27, 2009 Opinion.  <u>Khair</u>, 893 F. Supp. at 337.

-6-

This Court, therefore, denies reconsideration of the Court's denial of leave to amend Zahl's §

1985(3) claim.

      **2.**    **RICO**

Zahl argues that this Court erred in finding that the Second Amended Complaint's federal

and state RICO claims were futile because it misconstrued the applicable law regarding RICO

continuity.  (Pl. Opp. Br. at 9-10.)  Specifically, Zahl claims that because this Court found that

the pattern of racketeering activity alleged in the Second Amended Complaint was closed, as

opposed to open-ended, the reliance of the Court on the likelihood of any future recurrence of

racketeering activity was error under applicable precedent.  H.J. Inc. v. Northwestern Bell Tel.,

492 U.S. 229 (1989); Barticheck v. Fidelity Union Bank/First Nat'l State, 832 F.2d 36 (3d Cir.

1987); Pl. Opp. Br. at 10, 14-15.

Rubinfeld, in opposing Zahl's reconsideration argument, claims that the RICO continuity

requirement does comprehend a threat of ongoing racketeering activity.  (Rubinfeld Opp. Br. at

9-10.)  The State Defendants maintain that Zahl's RICO arguments are not proper for a

reconsideration motion, and that his remedy is to appeal.  (State Def. Opp. Br. at 11.)  The

Kosovsky Defendants contend that Zahl's RICO arguments are merely disagreements with the

Court's interpretation of cases, and as such, not proper matter for reconsideration.  (Kosovsky

Def. Reply Br. at 9-10.)

In its March 27, 2008 Opinion, this Court relied upon H.J., Inc., in which the Supreme

Court described RICO continuity as follows:

> "Continuity" is both a closed- and open-ended concept, referring
> either to a closed period of repeated conduct, or to past conduct
> that by its nature projects into the future with a threat of repetition.

> See <u>Barticheck v. Fidelity Union Bank/First National State</u>, 832
> F.2d 36, 39 (3d Cir. 1987). It is, in either case, centrally a temporal
> concept-and particularly so in the RICO context, where <u>what</u> must
> be continuous, RICO's predicate acts or offenses, and the
> <u>relationship</u> these predicates must bear one to another, are distinct
> requirements. A party alleging a RICO violation may demonstrate
> continuity over a closed period by proving a series of related
> predicates extending over a substantial period of time. Predicate
> acts extending over a few weeks or months and threatening no
> future criminal conduct do not satisfy this requirement: Congress
> was concerned in RICO with long-term criminal conduct. Often a
> RICO action will be brought before continuity can be established
> in this way. In such cases, liability depends on whether the <u>threat</u> of
> continuity is demonstrated.

492 U.S. at 241-42 (emphasis in original).  This Court also applied the Third Circuit case of

<u>Banks v. Wolk</u> in its March 27, 2009 Opinion.  918 F.2d 418 (3d Cir. 1990).  With respect to

RICO continuity, <u>Banks</u> interpreted <u>H.J., Inc.</u> as follows:

> As for the "continuity" requirement, the Court rejected the notion
> that RICO requires proof that a defendant engaged in multiple
> criminal "schemes."  Predicate offenses committed in furtherance
> of a single criminal scheme can constitute a RICO pattern if the
> acts present the threat of future criminal activity.  The criminal
> conduct need not be ongoing.  Past conduct will satisfy the
> continuity requirement if "by its nature [it] projects into the future
> with a threat of repetition."
>
> The Court stressed that the question of continuity depends on the
> facts of each case, but noted that "[p]redicate acts extending over a
> few weeks or months and threatening no future criminal conduct
> do not satisfy this requirement: Congress was concerned in RICO
> with long-term criminal conduct."  Although continuity is
> "centrally a temporal concept," this court has questioned whether
> the length of time over which the criminal activity occurs or
> threatens to occur should be the decisive factor without reference
> to the "societal threat" posed by the activity.

918 F.2d at 422 (internal citations omitted).  In its earlier Opinion, this Court found that <u>Banks</u>

required a threat of repetition in order to find RICO continuity.

Zahl disputes that H.J., Inc. and Banks impose a threat of repetition requirement for closed-ended RICO continuity.  (Pl. Opp. Br. at 15.)  This Court does not agree with Zahl's contention in the context of the Second Amended Complaint.  Zahl is correct that in some cases, a closed sequence of racketeering acts could present a pattern that falls within the Banks continuity requirement.  This Court, however, in reading Banks, concludes that it incorporated a consideration of the threat of future repetition when considering past conduct.  918 F.2d at 422.  This Court employed such reasoning in its March 27, 2009 Opinion, and does not see fit to grant reconsideration on the basis of H.J., Inc. and Banks without having discovered a defect in its analysis of those cases.

Zahl also argues that this Court misapplied Gamboa v. Valdez it its March 27, 2009 Opinion.  457 F.3d 703 (7th Cir. 2006); Pl. Opp. Br. at 15.  Zahl contends that Gamboa's reasoning is limited to schemes with "built-in termination point[s]" with "no indication that the perpetrators have engaged or will engage in similar misconduct."  457 F.3d at 709; Pl. Opp. Br. at 15.  This Court finds that Zahl is simply disagreeing with this Court's assessment of Gamboa's applicability to the Second Amended Complaint from the March 27, 2009 Opinion.  In that Opinion, this Court found that the Zahl conspiracy was similar to the Gamboa conspiracy in that "there is no indication in the Second Amended Complaint that the defendants seek to attack the licenses or acquire the practices of other physicians" and that the conspiracy alleged had been terminated.  (Op. of Mar. 27, 2009 at 15-16.)  This Court stands by its prior assessment of the Second Amended Complaint: that pleading did not allege a scheme or pattern or racketeering likely to be repeated, and lacked continuity.  Zahl's request for reconsideration, therefore, is denied.

**B.      Motions to Dismiss**

The applicable inquiry under Federal Rule of Civil Procedure 12(b)(6) is well-settled.

Courts must accept all well-pleaded allegations in the complaint as true and draw all reasonable

inferences in favor of the non-moving party.  See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974),

abrogated on other grounds by Harlow v. Fitzgerald, 457 U.S. 800 (1982); Allegheny Gen. Hosp.

v. Philip Morris, Inc., 228 F.3d 429, 434-35 (3d Cir. 2000).  However, courts are not required to

credit bald assertions or legal conclusions improperly alleged in the complaint.  See In re

Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1429 (3d Cir. 1997).  Similarly, legal

conclusions draped in the guise of factual allegations may not benefit from the presumption of

truthfulness.  See In re Nice Sys., Ltd. Sec. Litig., 135 F. Supp. 2d 551, 565 (D.N.J. 2001).

A sound complaint must set forth "a short and plain statement of the claim showing that

the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  This statement must "give the defendant

fair notice of what the . . . claim is and the grounds upon which it rests."  Bell Atl. Corp. v.

Twombly, 127 S.Ct. 1955, 1964-65 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).

Moreover, "factual allegations must be enough to raise a right to relief above the speculative

level on the assumption that all of the allegations in the complaint are true."  Id.  Ultimately,

however, the question is not whether plaintiffs will prevail at trial, but whether they should be

given an opportunity to offer evidence in support of their claims.  Scheuer, 416 U.S. at 236.

With this framework in mind, the Court turns now to Defendants' motions.

In its March 27, 2009 Opinion, this Court granted leave for certain Defendants to file

motions to dismiss the § 1985(3), § 1986, common law conspiracy, and declaratory judgment

claims that had survived the initial motion practice in this case.  (Op. of Mar. 27, 2009 at 21.)

Those Defendants duly filed their motions, and requested additional relief from this Court consisting of altering some dismissals of the Amended Complaint from without prejudice to with prejudice.  This Court will consider at the present time only the dismissal of the claims it granted leave to move on in its Opinion and Order of March 27, 2009 with respect to the Defendants mentioned in same.  This Court did not grant leave for additional motions to dismiss to be filed, or request motions of a broader scope that would essentially amount to reconsideration of this Court's March 25, 2008 Opinion and Order.  Defendant McKeown, on the other hand, has before the Court at this time his initial motion to dismiss, having only recently been served by Plaintiff. The Court will, therefore, consider in full the arguments presented by McKeown in his present motion.

       **1.**      **Rubinfeld**

Rubinfeld moves to dismiss the remaining count against him from the Amended Complaint, for a § 1985(3) civil rights conspiracy, on the basis that he had no common discriminatory purpose with the other alleged conspirators as required in a § 1985(3) claim. (Rubinfeld Br. at 7-8.)  Zahl does not oppose Rubinfeld's motion.

This Court finds, for the reasons discussed in the March 27, 2009 Opinion, that the § 1985(3) claim in Zahl's Amended Complaint must be dismissed as to Rubinfeld.  As previously noted by this Court, "the victim of a conspiracy motivated by race discrimination may bring a § 1985(3) claim, while the victim of mere commercial or economic animus may not."  Farber v. City of Paterson, 440 F.3d 131, 138 (3d Cir. 2006).  Zahl has not alleged anything more against Rubinfeld than commercial animus as a competitor for the Ridgefield contract.  The § 1985(3) claim against Rubinfeld in the Amended Complaint is, therefore dismissed with prejudice.

Rubinfeld also seeks to have this Court convert the dismissals without prejudice from the Amended Complaint into dismissals with prejudice.  Although the Court is concerned that this case has not proceeded into discovery more than three years after being filed, it will not at this time convert dismissals from the Amended Complaint that were not issued with prejudice into dismissals with prejudice, as such relief was not contemplated in this Court's March 27, 2009 Opinion and Order.

### 2.   Blackman

Blackman, who originally answered the Amended Complaint, moves to dismiss the entire Amended Complaint as to herself at this time based on the Rooker-Feldman doctrine, the entire controversy doctrine, claim preclusion, and issue preclusion.  (Blackman Br. at 6-10.)  She also adopts the arguments presented by the other defendants.  (Id. at 5.)  Zahl does not oppose the motion.

The arguments Blackman places before the Court exceed the scope of the leave to file granted in the March 27, 2009 Opinion, as her various preclusion arguments go to the entirety of the Amended Complaint, rather than just to the four claims this Court contemplated ruling upon herein.  (Op. of Mar. 27, 2009 at 21.)

On January 23, 1998, Blackman filed suit against Zahl in the Superior Court of New Jersey seeking relief on employment and contract claims related to her employment with Zahl.  Zahl counterclaimed for defamation, invasion of privacy, tortious interference with business relationships, and breach of fiduciary duty.  On the instant motion, Blackman relies upon the Appellate Division opinion in Blackman v. Zahl. No. A-2019-99T5 (N.J. Super. Ct. App. Div. 2001) (unreported).  In Blackman v. Zahl, the Appellate Division found that Zahl's counterclaims

were properly dismissed by the Superior Court.  No. A-2019-99T5, slip op. at 12.

"The entire controversy doctrine requires litigants in a civil action to raise all affirmative claims arising from a single controversy that each party might have against another party, including counterclaims and cross-claims." Boothby v. Melendez, No. A-4001-07T1, 2009 WL 605318, at *3 (N.J. Super. Ct. App. Div. 2009) (unreported). Under New Jersey's doctrine of the entire controversy, a litigant seeking to remedy a single wrong should bring all legal theories in his first complaint, or later theories will be precluded.  Watkins v. Resorts Int'l Hotel and Casino, Inc., 124 N.J. 398, 413 (1991).  "The entire controversy doctrine is essentially New Jersey's specific, and idiosyncratic, application of traditional res judicata principles." Rycoline Prods., Inc. v. C & W Unlimited, 109 F.3d 883 (3d Cir.1997). Thus, the entire controversy doctrine will preclude a federal claim that arose from the same transaction or occurrence underlying prior state court adjudication.  "In applying the doctrine, '[i]t is the core set of facts that provides the link between distinct claims against the same parties . . . and triggers the requirement that they be determined in one proceeding.'"  Oliver v. Ambrose, 705 A.2d 742, 747 (N.J. 1998) (quoting DiTrolio v. Antiles, 662 A.2d 494, 502 (N.J. 1995)).

As Blackman's employment has been detailed in prior opinions of this Court, this Court will not belabor the factual issues, but notes that Blackman was an acquaintance of Zahl's ex-wife, Blackman worked as an anesthesiologist for Zahl in his practice at Ridgedale, Blackman sought to compete against Zahl for the Ridgedale contract, and Blackman reported Zahl to the Board of Medical Examiners for client record issues.  All of these facts were known to Zahl at the time of Blackman v. Zahl.  These facts also supply Blackman's role in the Amended Complaint, with the exception of conclusory allegations that Blackman joined various

-13-

conspiracies.  Blackman v. Zahl revolved around Blackman's attempt to compete with Zahl in obtaining the Ridgedale contract and Blackman's complaint to the medical licensing authorities in New Jersey.  No. A-2019-99T5, slip op. at 3-5.  Thus, the same transactions and relationships that were at issue in Blackman v. Zahl were submitted to this Court in the Amended Complaint in the guise of civil rights and RICO claims with respect to Blackman, and the entire controversy doctrine operates as a bar to her liability.  Oliver v. Ambrose, 705 A.2d at 747.  The Amended Complaint, therefore, is dismissed with prejudice as to Blackman.

### 3.    The State Defendants

The State Defendants move for dismissal of all remaining claims against them and for clarification of this Court's March 26, 2008 Order.  The State Defendants assert that the remaining claims against them are the declaratory judgment claim, the § 1985(3) claim, and the § 1986 claim from the Amended Complaint.  (State Def. Br. at 6.)  Zahl does not oppose their motion.

 For the reasons set forth in this Court's March 27, 2009 Opinion, this Court finds that the remainder of the Amended Complaint must be dismissed as to the State Defendants.  In that Opinion, this Court found that the only evidence of the requisite animus for a § 1985(3) conspiracy was Deputy Attorney General Harper's alleged statement that Zahl should leave the United States and go to the Dominican Republic.  (Op. of Mar. 27, 2009 at 19.)  This is the only evidence of bias in either the Second Amended Complaint or the Amended Complaint that could satisfy § 1985(3), and it can only be ascribed to Harper.  (Id.)  A § 1985(3) conspiracy must have a meeting of the minds among its members.  Startzell v. City of Philadelphia, 533 F.3d 183, 205 (3d Cir. 2008).  Zahl failed to allege any real meeting of the minds for the purposes of § 1985(3):

-14-

some Defendants had economic motives, one possibly had a discriminatory motive, and some

had personal disagreements with him related to family difficulties.  The § 1985(3) claim from the

Amended Complaint, therefore, is dismissed as to the State Defendants with prejudice.

Additionally, as discussed in the March 27, 2009 Opinion, the § 1986 claim requires a §

1985 claim to be viable, and the declaratory judgment claim requires an underlying controversy.

Clark v. Clabaugh, 20 F.3d 1290, 1295 n.5 (3d Cir. 1994); Zimmerman v. HBO Affiliate Group,

834 F.2d 1163, 1170 (3d Cir. 1987).  With the dismissal of the § 1985(3) claim from the

Amended Complaint, neither of these predicates exist as to the State Defendants.  This Court,

therefore, dismisses both the § 1986 claim and the declaratory judgment claim as to the State

Defendants, and finds that while the declaratory judgment claim should not be dismissed with

prejudice, the § 1986 claim is dismissed with prejudice.

The Court will also clarify its March 26, 2008 order with respect to the motions to

dismiss filed against the Amended Complaint, and dismiss with prejudice all claims against

former Deputy Attorney General Paul Kenny and Chief Justice Rabner.

### 4.   The Kosovsky Defendants

The sole remaining claim from the Amended Complaint against the Kosovsky Defendants

was for a declaratory judgment.  (Kosovsky Br. at 1.)  The Kosovkys now move to dismiss that

claim, and Zahl does not oppose their motion.

In its March 27, 2009 Opinion, this Court found that Zahl could not amend his claim for

declaratory judgment because of the lack of an underlying controversy.  Zimmerman, 834 F.2d at

1170; Op. of Mar. 27, 2009 at 20-21.  As there are no remaining substantive claims against the

Kosovskys in the Amended Complaint, this Court will dismiss without prejudice the declaratory

judgment claim from same due to the lack of live, legal dispute.  <u>Zimmerman</u>, 834 F.2d at 1170.

### 5.    McKeown

Proceeding <u>pro se</u>, McKeown twice submitted the same motion to dismiss to this Court. Its legal argument is: "[i]n the interest of judicial economy, I hereby adopt by reference all submissions had herein in support of an order to dismiss, <u>inter alia</u>."  (McKeown Affirmation ¶ 2.)

While this Court interprets the submissions of <u>pro se</u> litigants liberally, it is inconsistent with judicial economy for this Court to trawl through the various briefs submitted to this Court over several years in order to seek the arguments to which McKeown refers.  "Judges are not like pigs, hunting for truffles buried in the record."  <u>Albrechtsen v. Board of Regents</u>, 309 F.3d 433, 436 (7th Cir. 2002) (internal quotation omitted).  McKeown bears the burden in his motion to dismiss, and his request that this Court create a pastiche of arguments from hundreds of pages of prior briefing fails to meet that burden.  <u>Hedges v. United States</u>, 404 F.3d 744, 750 (3d Cir. 2005) ("The defendant bears the burden of showing that no claim has been presented."). Furthermore, each defendant in this case has strikingly different defenses available.  This Court has previously ruled on such fact-specific defenses as absolute immunity, the <u>Rooker</u>-<u>Feldman</u> doctrine, and res judicata.  Without further argument by McKeown, this Court has no means at its disposal to determine whether or not McKeown is asserting that such defenses are available to him, and therefore denies his motion to dismiss.

### CONCLUSION

For the foregoing reasons, Plaintiff's motion for reconsideration is denied, the motion to dismiss of Blackman is granted in full, the motion to dismiss of McKeown is denied, and the

motions to dismiss of Rubinfeld, the State Defendants, and the Kosovky Defendants are granted

in part and denied in part.


DATED: September 18, 2009                              _/s/ Jose L. Linares_____
                                                       United States District Judge