NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| KENNETH ZAHL, M.D., ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No.: 06-3749 (JLL) |
| v. ) | |
| ) | **OPINION** |
| NEW JERSEY DEPARTMENT OF ) | |
| LAW AND PUBLIC SAFETY, ) | |
| et. al., ) | |
| ) | |
| Defendants. ) | |

For Plaintiff: Paul J. Verner (*Verner Simon, P.C.*)
          Hiram Eastland (*Eastland Law Offices, PLLC*)
For State Defendants: James J. Savage (*New Jersey Department of Law and Public Safety*)
For Kosovsky Defendants: Emily A. Stubbs (*Friedman, Kaplan, Seiler & Adelman, LLP*)
                Amy C. Brown (*Friedman, Kaplan, Seiler & Adelman, LLP*)
                Jeffrey Wang (*Friedman, Kaplan, Seiler & Adelman, LLP*)
For Bonnie Blackman: Andrew M. Epstein (*Lampf, Lipkind, Prupis & Petigrew*)
For Phillip Rubinfeld: Joseph Marc Gorrell (*Brach Eichler L.L.C.*)
              Richard B. Robins (*Brach Eichler L.L.C.*)

**LINARES**, District Judge.

      This matter comes before the Court by way of the motion [CM/ECF #260] to file a Third Amended Complaint filed by Plaintiff Kenneth Zahl ("Plaintiff" or "Zahl") on November 25, 2009. Also before the Court is the informal motion by Defendant Kevin McKeown ("McKeown") to vacate the entry of default against him [CM/ECF #278]. No oral argument was heard. Fed. R. Civ. P. 78. For the reasons set forth in this Opinion, Plaintiff's motion is denied, and McKeown's motion to vacate default is granted.

## INTRODUCTION

As this Court writes only for the parties, and because it set forth the factual background to this case extensively in a previous opinion, only a brief description of the facts underlying this matter merits discussion. Zahl, an anesthesiologist, engaged in the practice of medicine in New Jersey until 2006. He was also licensed to practice in New York, and is still licensed to practice in Pennsylvania. During the period of time relevant to this case, Zahl's New Jersey practice involved providing "eye block" anesthesia for Medicare-reimbursed surgery.

Zahl's billing method for the eye block procedures caused friction with the Medicare system, and he was eventually found to have overcharged Medicare. Zahl's former physician employee, Defendant Bonnie Blackman ("Blackman"), reported his billing issues to the New Jersey medical licensing authorities, and an investigation ("Zahl I") commenced in 1999. New Jersey's licensing board eventually revoked Zahl's license in 2003. During Zahl's appeal, he was permitted to continue practicing medicine under a billing monitoring program. Before the appeal of the first administrative case against Zahl ended, New Jersey's licensing authorities brought a second administrative complaint ("Zahl II") against Zahl for violating his billing monitoring. The Supreme Court of New Jersey eventually ruled on Zahl I, upholding the revocation of Zahl's license for his Medicare billing improprieties in 2006. In re License Issued to Zahl, 895 A.2d 437 (N.J. 2006). As of the briefing on the instant motion, Zahl II was on appeal.

While Zahl I and Zahl II were proceeding, Zahl sought to have this Court prevent the New Jersey administrative authorities from proceeding, but his complaint was dismissed and he was unsuccessful on appeal. Zahl v. Harper, 282 F.3d 204, 206, 212 (3d Cir. 2002).

In the proposed Third Amended Complaint, Zahl alleges that conspirational connections

between Blackman, his ex-in-laws and ex-wife (the Kosovsky defendants), a private investigator hired by the Kosovskys (defendant McKeown), the physician who replaced him in his eye block practice (Rubinfeld), an office employee in his practice (Brittle), and deputy attorney generals (Harper and Warhaftig) resulted in the loss of his license and practice. Zahl filed his initial complaint in this case by way of Order to Show Cause on August 10, 2006, seeking temporary and preliminary injunctive relief; this Court denied Zahl's application for temporary restraints on August 28, 2006 and ordered Zahl to show cause why this Court possessed subject matter jurisdiction over his claims. While the sua sponte order to show cause of this Court was pending, on April 30, 2007, Zahl filed an Amended Complaint. On May 24, 2007, this Court concluded that the issues had changed dramatically due to Zahl's Amended Complaint, and the pending motions were dismissed without prejudice and a preliminary re-filing schedule established. On March 25, 2008, this Court dismissed the majority of Zahl's claims. Zahl moved to amend his complaint a second time on September 12, 2008, and his motion was opposed by the New Jersey state defendants, Rubinfeld, Blackman, and the Kosovskys. This Court denied that motion to amend, denied Plaintiff's motion for reconsideration of that decision, and dismissed all of Zahl's claims against all non-defaulting defendants. The instant motion to amend followed.

## DISCUSSION

Zahl's Third Amended Complaint alleges six counts. He seeks declaratory judgment under 28 U.S.C. § 2201 that the Defendants acted illegally; injunctive relief under 42 U.S.C. § 1983; damages against Defendants for conducting a 42 U.S.C. § 1983 conspiracy to deprive him of federal and state civil rights; damages against Defendants under the New Jersey Civil Rights Act, N.J.S.A. § 10:6-2(c); and damages under common law civil conspiracy.

A. **Legal Standard**

Leave to amend Zahl's complaint is governed by Federal Rule of Civil Procedure 15: "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2); Shane v. Fauver, 213 F.3d 113, 115 (3d Cir. 2000) (requiring leave of court or consent after first amendment). The Supreme Court has elaborated on the standard to be applied when considering amendment requiring leave of court:

> In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be "freely given."

Foman v. Davis, 371 U.S. 178, 182 (1962). "In assessing 'futility,' the District Court applies the same standard of legal sufficiency as applies under Rule 12(b)(6)." Shane, 213 F.3d at 115.

The applicable inquiry under Federal Rule of Civil Procedure 12(b)(6) is well-settled. In evaluating the sufficiency of a complaint, a court must accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party. See Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008). But, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions[;][t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 129 S.Ct. at 1949. It is the underlying specific facts alleged in a complaint that should be treated as true and evaluated.

A complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to

relief that is plausible on its face.'" Ashcroft v. Iqbal, --- U.S. ----, 129 S.Ct. 1937, 1949 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully;" mere consistency with liability is insufficient. Id. However, a plaintiff is not required to plead every element of a prima facie case, but he must at least make "allegations that raise a reasonable expectation that discovery will reveal evidence of the necessary element." Fowler v. UPMC Shadyside, 578 F.3d 203, 213 (3d Cir. 2009) (internal quotations omitted). With this framework in mind, the Court turns now to Plaintiff's motion.

**B.   Warhaftig**

In its March 2008 Opinion, this Court invoked the doctrine of Younger v. Harris, 401 U.S. 37 (1971), and abstained from any claims concerning Zahl II. (Op. of March 25, 2008 at 27.) This Court's March 2008 Opinion was careful not to draw a precise boundary between Zahl I and Zahl II, as the two cases ran simultaneously for a short time. (Id. at 27-29.) This Court was, however, clear in stating that claims based upon Zahl II were subject to Younger abstention.

Zahl interprets the March 2008 Opinion as permitting him to allege a broad range of facts from Zahl II, including the addition of a new party, Deputy Attorney General Jeri L. Warhaftig, who worked with the late Paul R. Kenny on Zahl II. The Third Amended Complaint alleges a "continuing and overlapping" single conspiracy throughout Zahl I and Zahl II, thereby seeking to bootstrap the facts of Zahl II into the Zahl I conspiracy. (Third Am. Compl. ¶¶ 109, 112.) Younger abstention, however, operates as a dismissal with prejudice. Lui v. Commission, Adult Entm't, 369 F.3d 319, 327 (3d Cir. 2004). This Court cannot now permit Plaintiff to amend his pleadings in such a way as to add a claim or party solely concerned with Zahl II. Lui, 369 F.3d at

328 (abstention under Younger places subject of abstention entirely in state court). All claims against Warhaftig related to Zahl II, therefore, are futile.

After reviewing the Third Amended Complaint and the arguments presented by the parties, this Court finds very little remaining that connects Warhaftig to the Zahl I claims, aside from the allegations in paragraph 124. In that paragraph, Warhaftig is alleged to have notified the New Jersey Supreme Court of the license suspension ordered in Zahl II while Zahl I was on appeal before that court. To the extent Warhaftig's notice to the New Jersey Supreme Court is a fact relevant to Zahl I, it was undertaken by Warhaftig in her role as a prosecutor for Zahl II. Prosecutors are entitled to absolute immunity for actions taken within the scope of their prosecutorial function, and communication with the Supreme Court of New Jersey concerning an ongoing case, part of which was on appeal to that Court, is within the prosecutorial role. Yarris v. County of Delaware, 465 F.3d 129, 136 (3d Cir. 2006). This Court, therefore, finds that Zahl's amendment to include Warhaftig is futile, and his motion to amend with respect to her is denied with prejudice.

**C.     Class of One § 1983 Conspiracy and New Jersey Civil Rights Act Claims**

Zahl's § 1983 conspiracy claim is predicated on violations of Zahl's First Amendment rights and his Equal Protection rights under the Fifth and Fourteenth Amendments. Section 1983, while not a source of substantive rights, serves as a means of redress for violations of federal rights under color of state law. Curley v. Klem, 298 F.3d 271, 277 (3d Cir. 2002).

Zahl also seeks recovery under the New Jersey Civil Rights Act ("NJCRA"), N.J.S.A. § 10:6-2(c), a law enacted to provide a state remedy parallel with § 1983. In the Third Amended Complaint, Zahl does not indicate that his NJCRA claims are any different than his § 1983

claims, so this Court will analyze them alongside their related federal claims.

### 1.     Equal Protection

In order to bring a class of one claim under the Equal Protection Clause, "a plaintiff must at a minimum allege that he was intentionally treated differently from others similarly situated by the defendant and that there was no rational basis for such treatment." Phillips, 515 F.3d 243 (3d Cir. 2008).

With regard to the rational basis element of a class of one equal protection claim, the Supreme Court has narrowed the permissible scope of such a claim. In Engquist v. Oregon Department of Agriculture, 128 S. Ct. 2146, 2154 (2008), the Court examined a class of one equal protection claim brought by a government employee. In determining that class of one rational basis equal protection claims could not be brought in the public employment context, the Court held that "[t]here are some forms of state action . . . which by their nature involve discretionary decisionmaking based on a vast array of subjective, individualized assessments." Engquist, 128 S. Ct. at 2154. The Court further found that with respect to those decisions, "allowing a challenge based on the arbitrary singling out of a particular person would undermine the very discretion that such state officials are entrusted to exercise." Id. Chief Justice Roberts elaborated on the concept of discretionary decisions by means of an example outside the public employment context:

> Suppose, for example, that a traffic officer is stationed on a busy
> highway where people often drive above the speed limit, and there
> is no basis upon which to distinguish them.  If the officer gives
> only one of those people a ticket, it may be good English to say
> that the officer has created a class of people that did not get
> speeding tickets, and a "class of one" that did.  But assuming that it
> is in the nature of the particular government activity that not all

> speeders can be stopped and ticketed, complaining that one has been singled out for no reason does not invoke the fear of improper government classification.  Such a complaint, rather, challenges the legitimacy of the underlying action itself-the decision to ticket speeders under such circumstances.  Of course, an allegation that speeding tickets are given out on the basis of race or sex would state an equal protection claim, because such discriminatory classifications implicate basic equal protection concerns.  But allowing an equal protection claim on the ground that a ticket was given to one person and not others, even if for no discernible or articulable reason, would be incompatible with the discretion inherent in the challenged action.  It is no proper challenge to what in its nature is a subjective, individualized decision that it was subjective and individualized.

Id.  This Court finds that Zahl's class of one equal protection claim falls within the example provided in Engquist.  Zahl does not challenge in this action the outcome or validity of the findings concerning the loss of his license to practice medicine in New Jersey resulting from Zahl I. (Third Am. Compl. ¶ 7.)  Although the Third Amended Complaint takes issue with the manner in which the investigation was conducted, Zahl was found by the Supreme Court of New Jersey to be properly subject to a revocation of his medical license based on the findings of the Board in Zahl I.  In re License Issued to Zahl, 895 A.2d at 445.  Zahl's rational basis equal protection claim, therefore, is congruent to Engquist's traffic ticket example.  Taking the facts laid out in the Third Amended Complaint as true, Zahl was treated differently than other New Jersey doctors who had billing and paperwork issues.  The decision to bring a disciplinary action against Zahl, however, was an individualized assessment made by attorneys for the state of New Jersey entrusted with prosecutorial discretion little different than that of the hypothetical ticketing officer in Engquist.  To the extent Zahl's class of one equal protection claim is brought under a purely rational basis theory, therefore, Zahl's motion to amend is denied with prejudice.

In his reply brief, Zahl asserts that his equal protection claim also rests on an alternative theory, that of the vindictive class of one § 1983 cause of action discussed in Esmail v. McCrane. 53 F.3d 176, 178-79 (7th Cir. 1995). In that case, a liquor store owner was denied renewal of a liquor license due to a dispute with a town mayor: after extended litigation, the store owner was vindicated, but sued to recover the costs incurred from his persecution by the mayor. Esmail, 53 F.3d at 177. Esmail provides for a federal cause of action under § 1983 for violation of the equal protection clause when a plaintiff alleges that "the action taken by the state, whether in the form of prosecution or otherwise, was a spiteful effort to 'get' him for reasons wholly unrelated to any legitimate state objective." 53 F.3d at 180. Esmail also, however, characterizes the complaint upon which it bases its analysis as follows:

> This case is not pleaded as a case of selective prosecution in any of the above senses. In particular, Esmail is not complaining merely that equally or more guilty liquor licensees than he are treated more leniently. He is complaining about an orchestrated campaign of official harassment directed against him out of sheer malice.

Id. at 179. The vindictiveness equal protection claim described in Esmail, therefore, is one "wholly unrelated to any legitimate state objective" and one that is not a claim of selective prosecution. Id. at 179, 180. See also Janicki v. Elizabeth Forward Sch. Dist., 73 F. App'x 530, 533-34 (3d Cir. 2003) (unreported) (declining to apply Esmail when legitimate state rationale existed for defendant's action).

Here, Zahl's license was not revoked in an action wholly unrelated to legitimate state interests. Zahl was found to be engaged in a pattern of dishonest activity that resulted in the revocation of his license. In re License Issued to Zahl, 895 A.2d at 445-46. The actions taken by the state were related to a legitimate state objective. Id. The Esmail persecution theory of

equal protection, therefore, is not applicable in Zahl's case, and leave to amend is denied as to Count III of the Third Amended Complaint.

Zahl's NJCRA claim for an equal protection violation under Article I, Section I of the New Jersey Constitution, the New Jersey Supreme Court requires a slightly different analysis, but leads to the same conclusion. Under New Jersey law, a court conducting an equal protection inquiry applies a balancing test, weighing "the nature of the affected right, the extent to which the governmental restriction intrudes upon it, and the public need for the restriction." Brown v. City of Newark, 552 A.2d 125, 130 (N.J. 1989) (quoting Greenberg v. Kimmelman, 494 A.2d 294, 302 (N.J. 1985)). Here, the nature of Zahl's right is to be treated similarly to the class of New Jersey licensed physicians, but Zahl's interest in that non-suspect classification is outweighed by the need of the state to insure that medical licensees are honest and that the public can place its trust in doctors practicing within New Jersey. Count V, therefore, is futile to the extent that it depends upon an equal protection argument.

### 2. First Amendment

Count IV of the Third Amended Complaint asserts a First Amendment retaliation claim for violating Zahl's free expression and petition rights. (Third Am. Compl. ¶¶ 160-61.) The First Amendment to the United States Constitution states:

> Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.

U.S. Const. Amend. I. A First Amendment retaliation claim requires a plaintiff to plead that the activity in question is protected by the First Amendment, that a person of ordinary firmness

would be deterred from exercising constitutional rights by the retaliation, and that a causal connection exists between the protected conduct and the alleged retaliation. Hill v. Borough of Kutztown, 455 F.3d 225, 241 (3d Cir. 2006); Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003). Zahl asserts that he was retaliated against by Harper as a co-conspirator through Harper's actions during his initial license revocation.

Zahl's NJCRA claim asserts that it is being brought pursuant to Article I, Section 6 of the New Jersey Constitution, which in relevant part states: "[e]very person may freely speak, write and publish his sentiments on all subjects, being responsible for the abuse of that right."[1] None of the parties have alerted the Court to a difference between New Jersey and federal retaliation claims for freedom of expression, and this Court will treat Zahl's NJCRA claim for retaliation as coextensive with his federal claim. See Zamboni v. Stamler, 847 F.2d 73, 82 (3d Cir. 1988) (equating New Jersey and federal freedom of expression jurisprudence in determining whether retaliation would violate the public policy of New Jersey).

The Kosovsky Defendants, in opposition, argue that retaliation claims cannot succeed if the alleged retaliatory acts were independently justified. (Kosovsky Def. Opp. Br. at 28.) This argument relies on Wilkie v. Robbins. 551 U.S. 537, 557-58 (2007). Wilkie concerned a dispute between the federal government and a private landowner over trespasses and an easement. The private landowner brought a Fifth Amendment Bivens claim against certain government employees, and the Supreme Court considered its retaliation jurisprudence in evaluating whether

---

[1] The New Jersey Constitution's Petition Clause is located at Article I, Section 18, but would be construed in this case identically to the federal Petition Clause, as no party has made an argument to differentiate the two. McGovern v. City of Jersey City, No. 98-5186, 2007 WL 2893323, at *2 n.6 (D.N.J. Sept. 26, 2007) (Linares, J.), reconsidered on other grounds, 2008 WL 58820 (D.N.J. Jan. 2, 2008).

or not a Bivens claim was justified based on the conduct alleged by the private landowner. Wilkie, 551 U.S. at 557-558, n.10. The Court analyzed the relationship between the private landowner and the federal government in terms of parties engaged in a bargaining process, where each sought to "drive a hard bargain:" the government in Wilkie sought the grant of an easement from the private landowner, while the private landowner wished to have access to public lands. Id. at 557-58. The Court then distinguished the Wilkie dispute from a traditional retaliation claim, where "the plaintiff has performed some discrete act in the past" and the defendant's response must be evaluated to determine whether it was taken to punish the plaintiff for exercising a constitutional right or for a legitimate purpose. Id. at 558 n.10. The Court saw the retaliation claim in Wilkie as fundamentally different; it saw two alternative theories upon which a continuing retaliation claim could rest in a case where each party was seeking a legitimate goal:

> "Retaliation" cannot be classed as a basis of liability here, then, except on one or the other of two assumptions. The first is that the antagonistic acts by the officials extend beyond the scope of acceptable means for accomplishing the legitimate purpose; the acts go beyond hard bargaining on behalf of the Government (whatever spite may lurk in the defendant's heart). They are "too much." The second assumption is that the presence of malice or spite in an official's heart renders any action unconstitutionally retaliatory, even if it would otherwise have been done in the name of legitimate hard bargaining. The motive-is-all test is not the law of our retaliation precedent. If a spiteful heart rendered any official efforts actionable as unconstitutional retaliation, our retaliation discharge cases would have asked not only whether the plaintiff was fired for cause (and would have been fired for cause anyway), but whether the official who discharged the plaintiff tainted any legitimate purpose with spitefulness in firing this particular, outspoken critic. But we have taken no such position; to the contrary, we have held that proof that the action was independently justified on grounds other than the improper one defeats the claim.

Id.

It is not disputed here that disciplinary action against a doctor against whom a complaint had been made is a legitimate action for state government. Similarly, Zahl does not dispute the revocation of his license in this case. In re License Issued to Zahl, 895 A.2d 437, 445 (N.J. 2006); Third Am. Compl. ¶ 7. It is also clear that Zahl's free exercise and petition rights, if infringed, were infringed during his license revocation proceedings—precisely the type of continuing, adversary action alleged in Wilkie.

This Court finds that Zahl has not pled the first of the two Wilkie retaliation theories here. Although he lists a series of litigation events in which he asserts that Harper withheld "exculpatory evidence" and failed to disclose his true intent to tribunals,[2] the Third Amended Complaint alleges that "Harper acted out of a sheer malevolent animus towards Dr. Zahl," and that Harper's actions were "solely the result of a malignant animus and vindictive campaign to get Dr. Zahl . . . no other reason other than to harm Dr. Zahl existed for the action." (Third Am. Compl. ¶ 92.) This allegation against Harper is squarely within the second theory discussed in Wilkie, the malice theory of retaliation rejected by the Supreme Court. 551 U.S. at 558 n.10. This Court, therefore, finds that the First Amendment retaliation theory under which Zahl seeks to proceed is barred by Wilkie, and leave to amend is denied with respect to Count IV of the Third Amended Complaint. For the same reasons, this Court also denies leave to amend the freedom of expression portion of Count V.

Additionally, as this Court finds that Zahl may not amend with respect to either of his substantive § 1983 claims, he cannot amend with respect to Counts I or II of the Third Amended

---

[2] The Court notes that Harper is entitled to absolute immunity for his conduct of the litigation in Zahl I. (Op. of Mar. 25, 2008 at 43-44.)

Complaint. Both of those counts depend upon his substantive § 1983 claims and are futile in the absence of Counts III and IV.

**D.      Common Law Civil Conspiracy**

The remaining claim included in the Third Amended Complaint is Count VI, a common law civil conspiracy claim. As this Court has previously noted, New Jersey law provides that civil conspiracy is a dependent claim, and must be alleged alongside a substantive claim. Eli Lilly and Co. v. Roussel Corp., 23 F. Supp 2d 460, 497 (D.N.J. July 7, 1998). As all of the other claims in the Third Amended Complaint are futile, leave to amend is denied as to Count VI.

**E.      Repeated Failure of Amendment and Undue Delay**

Defendants move the Court in their opposition papers to deny Zahl leave to amend because Zahl has engaged in undue delay and also because they have been prejudiced by his repeated amendments.

After the conditions for amendment as a matter of right have expired,

> a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires.

Fed. R. Civ. P. 15(a)(2). "In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.'" Foman v. Davis, 371 U.S. 178, 182 (1962).

This Court has now ruled, in whole or in part, on four of Zahl's complaints. Three of the complaints—the initial Verified Complaint, the Amended Complaint, and this Third Amended

Complaint—allege entirely different legal theories for the same underlying facts. Presently in the case are two defendants, Mary Sue Brittle and Kevin McKeown, against whom default has been entered. All other defendants have been dismissed, and this is the second consecutive complaint which has been found futile by this Court. This case also has yet to enter discovery, despite being over three years old.

Loath as this Court is to deny any plaintiff the opportunity to amend, this Court finds that Zahl has now repeatedly failed to submit a complaint that survives a Rule 12(b)(6) analysis on a motion to dismiss or to amend, and the motion for leave to amend is denied on that basis. St. Clair v. Citizens Fin. Group, 340 F. App'x 62, 67 (3d Cir. 2009) (unreported) (finding no abuse of discretion in denial of second amendment to RICO claim).

Additionally, given that this Court has just reviewed the fourth complaint dressing the same facts in a different legal guise, this Court finds that undue delay compels denial of Zahl's motion. Esmail, the case central to Zahl's class of one § 1983 theory, was quoted in Zahl's Amended Complaint, now over two years old. (Am. Compl. ¶ 104.) Despite knowing of the potential class of one theory available to him, Zahl waited until briefing on his motion to file the Second Amended Complaint to discuss the theory in depth, and has waited until now to formally submit a pleading based upon that theory. "Significantly, delay may become undue when a movant has had previous opportunities to amend a complaint." USX Corp. v. Barnhart, 395 F.3d 161, 168 (3d Cir. 2004) (quotation and capitalization change omitted). Here, Zahl has shown knowledge of the class of one caselaw for a significant amount of time, but held back from deploying it. This delay is undue, and the Court also denies the motion to amend on that basis.

F.   **McKeown's Motion to Vacate Default**

Rule 55(c) provides that the entry of default may be vacated for "good cause." Fed. R. Civ. P. 55(c). In this circuit, the three factors weighed by a court in vacating default are: prejudice to the plaintiff, availability of a meritorious defense, and whether the default was entered due to the culpable conduct of the defaulting party. Budget Blinds, Inc. v. White, 536 F.3d 244, 256 (3d Cir. 2008) (describing three-factor test as applicable to vacating default or vacating default judgment). McKeown argues that the default entered against him should be vacated because it was entered while he had a pending request before the Honorable Claire C. Cecchi, U.S.M.J., for an extension of time in which to file his motion to dismiss. Plaintiff opposes McKeown's request, maintaining that he has ben prejudiced by McKeown's failure to provide specific legal arguments for dismissal of Plaintiff's claims, and also that a motion to dismiss by McKeown would be futile. Plaintiff does, however, consent to vacation of default if McKeown agrees to file an answer.

This Court finds that the Rule 55(c) "good cause" factors favor vacation of default in this instance. First, McKeown has now demonstrated willingness to brief issues to this Court in a manner that relates legal issues to the facts applicable to him. McKeown filed an opposition to Zahl's most recent motion to amend which, although not considered by this Court due to his being in default, discusses available defenses and some facts. (McKeown Opp. Br., passim.) This brief discloses potentially meritorious defenses to various claims brought by Zahl, including the statute of limitations. Furthermore, this new litigation posture by McKeown mitigates the prejudice Zahl claims he would suffer if default is vacated, as Zahl will now be able to respond to legal and factual assertions specific to McKeown. Finally, McKeown is representing himself pro se, and there does not appear to be any culpable conduct in the record at present with regard to

his failure to respond to Zahl's complaints. This Court, therefore, vacates the default entered against McKeown.

## CONCLUSION

For the foregoing reasons and as set forth in the accompanying order, Plaintiff's motion to amend is denied as futile, and McKeown's motion to vacate default is granted. An appropriate order accompanies this Opinion.


DATED: March 9, 2010                                                    /s/ Jose L. Linares
                                                                        United States District Judge